Good morning, Your Honor. May it please the Court, Charles Benot appearing for appellant and petitioner Shabondy Simpson. Your Honor, this case has to do entirely with whether Ms. Cole was actually kidnapped, as she claimed, or whether she went with Mr. Simpson voluntarily, whatever happened later in the evening, and particularly as to whether she was kidnapped from a Sacramento State dance on April 29, 2000. The testimony of Ms. Garcia in the new trial motion was more than sufficient to undermine her credibility, that is, the credibility of Ms. Cole concerning the Sac State incident, and the offer of proof as to Ms. Wells would have further eliminated the tenuous credibility of Ms. Cole. In these circumstances, it was an unreasonable determination of the facts for the State court to deny relief on this record. Doesn't that go to the weight? Beg your pardon? Doesn't that just go to the weight of what was said? It, on the total record, given the fact that the jury did not view Ms. Garcia's testimony, and given the fact that Ms. Cole's credibility was suspect, it was not corroborated, and in that regard, I think it's worth noting that Ms. Wells, the missing witness, was interviewed by both sides, not just by petitioner, but by the district attorney, and she was not called as a witness, and the jury is instructed that they may take into account the failure of either side to call a logical witness. So where was Ms. Wells? And so the significance of her testimony becomes all the more important from the beginning. Now we have Ms. Garcia, so it's just a legal question. It's not a question of –  Now, was Ms. Garcia not called as a trial witness and first served up as a witness in support of a motion for new trial? That's correct. So does the record tell us why counsel didn't bring Ms. Garcia and Ms. Wells in as trial witnesses? As to Ms. Garcia, he didn't know about her. He apparently ran into her in a store and began a conversation with her after the – and this was after the verdict, but before the judgment. So he was in the window when he could raise a new trial motion, and he did, and he brought her in to testify, but the jury never saw her. The jury never saw Ms. Wells either, And there's been several opportunities to get her into court, and she's elusive. She was in Washington, D.C. at one point, and she's the kind of witness, I think, that can be readily alienated if she is placed under subpoena. What counsel wanted was the opportunity to persuade her to come in voluntarily so that she wouldn't have to be forced. If she were forced, I think it seems that he was afraid that she would have a sudden attack of amnesia, and that would be the end of her helpfulness. Okay, thank you. Counsel, I want to go back for a moment to Cole's testimony. The defense had an opportunity to cross-examine her at trial, is that right? That's right. And any credibility issues were fully exposed before this jury. Isn't that also true? That's true. And so why does this, again, not go to weight? First of all, Ms. Cole's testimony was substantially undermined. In fact, this is a rare circumstance. She actually recanted at the preliminary hearing and testified under oath that she had exaggerated and, in fact, that she had added this whole kidnapping. And was impeached on that point, is that right? Yes, yes. And so the jury had an opportunity to take this matter into consideration in passing on the defendant's criminality. Is that right? They did. Or guilt or innocence. Yes, they did. And the point is that this was a close case. Her credibility was not unblemished. She was not corroborated. She was not corroborated by Ms. Wells. She was not corroborated by other logical witnesses. According to her, she was forcibly dragged off the dance floor at a college dance where there is security and there's a crowd and yet no one else noticed. So this is a close case. One small witness could tip the balance. But Garcia was more than a small witness and certainly Ms. Wells was. Well, we have to look at the probability of acquittal had she testified, though, do we not? That's what I invite the Court to do. And you're asking us to basically speculate what she would have said and why, indeed, she was not called by the defense. Well, of course, as to Ms. Garcia, we don't need to speculate. She did testify. As to Ms. Wells, I don't think we have to speculate either because there was an offer of proof. And, in fact, she was interviewed by the prosecution investigators. And so if anyone had a problem with the offer of proof, there was an opportunity to say, wait a minute, the Court is being misled here. But here we're reviewing this case under AEDPA, and you're asking us to determine that the view of the State Court was unreasonable as the Supreme Court has instructed us to view that term. I'm having difficulty seeing how on the issue of weight we get to the point that you want us to get to. This is not a situation that has egregious, outrageous facts. That to scream for relief where there has to be something done, this is almost what you would normally bring on a direct appeal where you're talking about whether an injustice was done under State law and the like. And help me, what am I missing here? Well, I think the thing that screams out is that the judge, the State Court judge, rejected Ms. Garcia's testimony because she couldn't remember whether the dance was on a Friday or a Saturday. Is that per se improper? Beg your pardon? Is that per se improper? No. All right. It's not per se improper, but it's a trivial point on which to reject the testimony of this witness. But it's within the trial judge's discretion to do so. It's not unfettered. It's reviewable. And he didn't find her lacking in credibility. He just noted that she couldn't remember what day this dance occurred, which was months before her testimony. Counsel, if I could ask you a question on this. As I understood this, the trial court, the State trial court refused to permit a new trial based on what Ms. Garcia said, in part because he felt that the question of credibility of Ms. Cole, the victim, was fully aired at the trial, that the jury had her preliminary hearing testimony, and then they had, you know, her explanation as to why she changed her mind and recanted and why she changed her mind again, and they could review all that. So, I mean, wouldn't it be a normal trial judge function to ask, how much more does Ms. Garcia add? And is that an abuse of discretion? And from our perspective, how does it get to the constitutional level that satisfies AEDPA? Yes, I'd like to address that. The credibility under AEDPA, if you have a witness that is massively impeached, like Ms. Cole, the abuse of discretion by the State trial court becomes more focused, not less. Just because she was massively impeached does not mean that she's entitled to more deference. The case teeters on the precipice. If I could ask just one more question. Do you have a Supreme Court case that says that a case where a district court abuses his or her discretion in denying a new trial assumes the proportions of a due process violation? To give relief in a State prisoner habeas case, I think we would have to conclude that what the State court judge did was either contrary to or an unreasonable application, not of our Ninth Circuit law, but of federal law determined by the Supreme Court. So you really have to kind of have a Supreme Court case, at least as I see the analytical framework. The questions like this will come up under AEDPA repeatedly in somewhat different guises. As far as I'm aware, the United States Supreme Court has not reviewed a case where a California court has ruled on a motion for a new trial. So I don't think we have that case, but I don't think we need that case because the fundamental question is whether the State court abused its discretion on this record. And it's just that there's going to be any number of motions where this is going to come up under. I don't think we need that degree of specificity that the court suggests. I'm not suggesting you need a case precisely like this, but it would help your argument if you had some case where the Supreme Court had said in any context that an abuse of discretion in ruling on an evidence issue in some circumstances can offend due process. Beyond what we've cited in the briefs, I don't think I can get any closer than that today. But all I can say is these cases are going to always be in manifold, a manifold variety of circumstances and contexts. You're never going to have a case exactly on point from the United States Supreme Court. Mr. Bonneau, I think you've. Thank you. I'm sorry. Go ahead, Judge Bowen. I was just going to say thank you. That's helpful. Mr. Bonneau, you've gone over your time. We've taken over your time. We'll give you a minute of rebuttal when it comes to that, but we'll now hear from the State. Mr. Riley? Good morning. May it please the Court. I'm Justin Riley on behalf of the Warden. I believe Judge Gould's last question was apt. We're looking for a clearly established Supreme Court case having to do with new trial motions binding the State. There aren't any. Relief is barred under the AEDPA. Mr. Bonneau takes the position that this is an unreasonable determination of the facts, which, of course, is the other prong. Would you like to address that? Are there any cases that you're aware of that would approximate the factual circumstances here or would give us any guidance on whether that prong of AEDPA has been violated? None. To my knowledge, the Supreme Court doesn't dabble in whether or not the States apply their own law correctly with regard to new trial motions, which is precisely why no habeas relief is available here. To reach an unreasonable determination of the facts, the appellant has to present some sort of contrary evidence, clear and convincing evidence to the contrary. There just isn't any. He's merely attempting to relitigate the new trial motion. That's just not available to him here. Appellant has been clear in his reply brief that the only two issues that survive for us here are ineffective assistance of appellate counsel and a continuance motion. So we're not even reviewing the propriety of the new trial motion here. It's not available to us here. We're viewing that through the lens of an ineffective assistance of appellate counsel claim. So what we're actually looking at is another layer or maybe even two layers more of deference. Was it reasonable for appellate counsel to reject this as a possible claim in the appeal? Looking at the standard of review on the State court appellate level, it was abuse of discretion, one of the strongest standards there are on direct appeal. Next, there was a very thorough credibility determination of the witness at the new trial motion. Appellate counsel looking at that credibility determination could see that that was bulletproof. And then there was a very hesitant witness, the sole witness with nonspecific testimony and a vacillating story. Well, I think it was this date. Well, I think there were more than one party. On one particular date, there were two parties to go to. I don't know when it was. I don't want to get into this, is all the witness was saying, the entire new trial motion. I gather your point is that the first prong of Strickland didn't even come close to being violated. And then we get the prejudice, which was also a thorough review by the trial court. And appellate counsel looking at that could think, oh, there's just no prejudice here. And then the deference on up the line for the California Supreme Court, which is what we are reviewing here. Unless there are any other questions. Here's my question. And as I understand it, Mr. Simpson got a pretty long sentence here, right? I believe it was a term of years, something less than 20. 17 sounds right. OK, well, so my question is, you know, obviously everyone would feel better about such a long sentence if all the witnesses with knowledge had testified before the jury made its decision. In a case like this where Garcia and Wells weren't served up in the initial trial, and it all comes on on a motion for a new trial, does the state take the position that a ruling on a motion for a new trial can never violate due process, that it can never offend fundamental fairness? I do not know if it can. And that sort of ignorance is what bars AEDPA relief, because the state court must know whether or not the state's behavior has violated due process, vis-a-vis clearly established Supreme Court precedent. So the fact that I cannot answer that question, that I don't know the answer to that question, shows that there is no clearly established Supreme Court precedent binding the states for that question. OK, thank you. So you've answered my question. OK. Thank you very much. I appreciate it. Mr. Bonnell, we'll give you a minute. Thank you. I'd like to make two observations. One is that my opponent said that no new evidence was offered. In fact, we are offering the testimony of Ms. Wells. We want to put her under subpoena, and we want to have an evidentiary hearing in district court. And that was requested. And so that is being offered. As far as Judge Gould's question about, well, can you get an evidentiary hearing under AEDPA in light of pinholster? Supreme Court decided it about a month ago. I just don't see the connection. I haven't seen it. It's new evidence, right? It's new evidence. It wasn't heard in the state court, according to you. It was offered in the state court. It was offered, but it wasn't heard. Well, I think the fact that it was offered makes the difference. It distinguishes it from pinholster. It was known about. She was interviewed by both sides. Could I address the question of Judge Gould? Unfortunately, your time is up, but we do thank you both for your argument. Thanks so much. The case of Simpson v. Evans is submitted.
judges: Marbley, Gould, Smith M.